IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION


UNITED STATES OF AMERICA                                    PLAINTIFF/RESPONDENT


V.                        Case No. 2:15-CR-20032-PKH-MEF-2


ASCENCION SALAS-MACIAS                                      DEFENDANT/PETITIONER


## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is the Defendant/Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody filed on September 26, 2016. (Doc. 48) The United States filed its response on October 27, 2016. (Doc. 51) Defendant/Petitioner filed a reply on December 2, 2016. (Doc. 52) The matter is ready for report and recommendation.

## I. Background

On September 24, 2015, an Amended Criminal Complaint was filed alleging that Defendant/Petitioner, Ascencion Salas-Macias ("Salas-Macias"), a/k/a Vincente Salas, a/k/a Vincente Salas-Macias, a/k/a "Primo," a/k/a "Chon," did knowingly and intentionally combine, conspire, confederate and agree with others to distribute a controlled substance, namely, a mixture or substance that contained methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1), all in violation of 21 U.S.C. § 846. (Doc. 3) After being arrested on September 23, 2015, Salas-Macias made his initial appearance before the Hon. Mark E. Ford, United

-1-

States Magistrate Judge, on September 25, 2015, where he waived the issues of probable cause and detention.  (Doc. 6)  Kenneth L. Osborne ("Osborne"), a Criminal Justice Act panel attorney, was appointed to represent Salas-Macias.  (Docs. 6, 10)

On October 28, 2015, Salas-Macias was named in an Indictment charging him with conspiracy to distribute methamphetamine (Count One), and aiding and abetting in the possession of 50 grams or more of actual methamphetamine with the intent to distribute (Count Two).  (Doc. 11)  Salas-Macias appeared for arraignment before Judge Ford on November 4, 2015, at which time he entered a not guilty plea to the Indictment.  (Doc. 19)

On December 10, 2015, Salas-Macias appeared with counsel before the Hon. P. K. Holmes, III, Chief United States District Judge, for a change of plea hearing.  (Doc. 24)  A written Plea Agreement was presented to the Court, and Salas-Macias pleaded guilty to Count Two of the Indictment charging him with aiding and abetting in the possession of 50 grams or more of actual methamphetamine with the intent to distribute.  (Docs. 24, 25)  The Court tentatively approved the Plea Agreement and ordered a Presentence Investigation Report ("PSR").  (Doc. 24)

An initial PSR was prepared by the United States Probation Office on March 31, 2016.  (Doc. 29)  On April 4, 2016, the Government advised that it had no objections to the PSR.  (Doc. 31)  On April 14, 2016, Salas-Macias submitted two objections to the initial PSR: the first addressing ¶ 29 of the PSR that reported agents observed a shrine of Jesus Malverde, the Patron Saint of Drug Dealers, in a display case in his living room – Salas-Macias asserting it was actually a shrine to San Miguel (Saint Michael), a "patron saint that protects people from bad things including, helping people that are recovering addicts;" and, the other objecting to the two-level enhancement assessed in ¶ 42 of the PSR, pursuant to U.S.S.G. § 3B1.1(c), for being an organizer, leader, manager, or

-2-

supervisor of the criminal activity.  (Doc. 34)

On May 3, 2016, a final PSR was submitted to the Court.  (Doc. 38)  In response to Salas-Macias's first objection, U. S. Probation acknowledged Salas-Macias' contention and incorporated it by reference, but as it had no impact on the Guidelines calculation, no changes were made to ¶ 29. (Doc. 38-1, p. 1)  Concerning Salas-Macias' objection to the two-level enhancement for being an organizer, leader, manager, or supervisor of the criminal activity, U. S. Probation reported that it believed the enhancement was applicable as both Salas-Macias and his co-defendant, Armando Picazo, "played an essential role in the procurement of the methamphetamine," and according to *Application Note 4* of U.S.S.G. § 3B1.1, more than one person can qualify as a leader or organizer of a criminal activity or conspiracy.  (Doc. 38-1, p. 2)

The final PSR determined that Salas-Macias was accountable for 438.14 grams of actual methamphetamine and 2,285.87 grams of a mixture of methamphetamine, which converts under the Guidelines to a total of 13,334.34 grams of marijuana equivalent.  (Doc. 38, ¶¶ 31-34)  Based on that drug quantity, Salas-Macias' Base Offense Level was determined to be 34.  (Doc. 38, ¶ 39)  This was increased two levels for Salas-Macias' aggravating role in the offense as an organizer, leader, manager, or supervisor in the criminal activity (Doc. 38, ¶¶ 34, 42), resulting in an Adjusted Offense Level of 36 (Doc. 38, ¶ 44).  After a three-level reduction for acceptance of responsibility, Salas-Macias' Total Offense Level was determined to be 33.  (Doc. 38, ¶¶ 46-48)  Salas-Macias had a criminal history score of 3, placing him in Criminal History Category II.  (Doc. 38, ¶ 56)  The statutory minimum term of imprisonment for the offense of conviction is 10 years and the maximum term of imprisonment is life.  (Doc. 38, ¶ 79)  Based upon a Total Offense Level of 33 and a Criminal History Category of II, Salas-Macias' advisory Guidelines range was determined to be 151

-3-

to 188 months imprisonment.  (Doc. 38, ¶ 80)

Salas-Macias appeared for sentencing on June 23, 2016.  (Doc. 44)  The Court made inquiry that Salas-Macias was satisfied with his counsel; the PSR was reviewed and adopted; final approval of the Plea Agreement was expressed; Salas-Macias and his counsel were afforded the opportunity to speak and make a statement; and, the Court then imposed a low-end Guidelines sentence of 151 months imprisonment, five years supervised release, no fine, and a $100.00 special assessment. (Doc. 44)  Judgment was entered by the Court on June 23, 2016.  (Doc. 45)

Salas-Macias did not pursue a direct appeal from the Judgment.

On September 26, 2016, Salas-Macias filed his *pro se* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (the "motion").  (Doc. 48) The motion argues that Salas-Macias never received a mitigating role adjustment at sentencing, and that he is entitled to relief pursuant to Amendment 794 to U.S.S.G. § 3B1.2.  (Doc. 48, pp. 4, 14-17)

The United States' response to the motion was filed on October 27, 2016.  (Doc. 51)  Salas-Macias filed a reply on December 2, 2016.  (Doc. 52)

## II. Discussion

"A prisoner in custody under sentence . . . claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).  "If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or

infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).  A thorough review of Salas-Macias' motion and the files and records of this case conclusively shows that Salas-Macias is not entitled to relief, and the undersigned recommends the denial and dismissal of his motion with prejudice without an evidentiary hearing.

## A.  Timeliness

A one year period of limitation applies to motions under 28 U.S.C. § 2255.  This period runs from the latest of: (1) the date on which the judgment of conviction becomes final; (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or, (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.  28 U.S.C. § 2255(f).

An un-appealed criminal judgment becomes final when the time for filing a direct appeal expires.  *Anjulo-Lopez v. United States*, 541 F.3d 814, 816 n. 2 (8th Cir. 2008).  The Judgment in this case was entered on June 23, 2016.  (Doc. 45)  Had Salas-Macias wished to file an appeal, he was required to do so within 14 days.  *See* Fed. R. App. P. 4(b)(1)(A)(i).  Salas-Macias did not file an appeal, and his conviction thus became final on July 7, 2016.  *See Murray v. United States*, 313 Fed. App'x 924 (8th Cir. 2009).  From that date, Salas-Macias had one year, or until July 7, 2017,

to timely file his § 2255 habeas petition.  Salas-Macias filed his § 2255 motion on September 26, 2016, well within the one year limitations period.

### B.  Salas-Macias' Guidelines Claim is Procedurally Defaulted

The Government argues that even if there had been an entitlement to a mitigating role adjustment, Salas-Macias cannot raise it in a § 2255 motion.  (Doc. 51, p. 4)  The undersigned agrees.

The United States Supreme Court has "long and consistently affirmed that a collateral challenge may not do service for an appeal." *United States v. Frady*, 456 U.S. 152, 165, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982) (internal citations omitted).  Relief under § 2255 "is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice." *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996).  The circumstances under which a guilty plea may be attacked on collateral review are strictly limited, and "[i]t is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Mabry v. Johnson*, 467 U.S. 504, 508, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984).  Even the voluntariness and intelligence of a guilty plea can be attacked on collateral review *only* if first challenged on direct review, as "[h]abeas review is an extraordinary remedy and 'will not be allowed to do service for an appeal.'" *Bousley v. United States*, 523 U.S. 614, 621, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) (internal quotation marks and citation omitted). "[T]he concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas." *Id.*

In this case, Salas-Macias pleaded guilty and did not pursue any relief on direct appeal.  By

failing to appeal, Salas-Macias procedurally defaulted the Guidelines claim he now raises.

This procedural default may be excused only if Salas-Macias "can show both (1) a cause that excuses the default, and (2) actual prejudice from the errors that are asserted." *Matthews v. United States*, 114 F.3d 112, 113 (8th Cir. 1997) (quoting *Bousley v. Brooks*, 97 F.3d 284, 287 (8th Cir. 1996)); *Apfel*, 97 F.3d at 1076; and, *Frady*, 456 U.S. at 167-68. "For cause to exist, the external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." *McCleskey v. Zant*, 499 U.S. 467, 497, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991).

Salas-Macias makes no such showing here. He fails to demonstrate how the factual or legal basis for his claim was not reasonably available to him in time to pursue relief on direct appeal. Defense counsel made an objection to the PSR based on the assertion that Salas-Macias should not receive an aggravating role enhancement under U.S.S.G. § 3B1.1. (Doc. 34) Although defense counsel did not also object to the PSR on the basis that Salas-Macias should receive a mitigating role reduction under U.S.S.G. § 3B1.2, the factual basis for either the aggravating role enhancement or a mitigating role reduction was known and available at that time. Further, despite Salas-Macias' allegation that Amendment 794 was "not available at that time," this is patently false as Amendment 794 became effective on November 1, 2015 — five months prior to the preparation of the initial PSR and over seven months prior to sentencing. Salas-Macias was, therefore, clearly aware of the issue in time to pursue relief on direct appeal. He simply failed to do so.

Further, there is no assertion by Salas-Macias that some interference by government officials, or some external impediment, prevented him from raising his claim on direct appeal.

Since Salas-Macias has not shown adequate cause to overcome the procedural bar in his case,

the Court need not consider the issue of actual prejudice.  *Ashker v. Class*, 152 F.3d 863, 871 (8th

Cir. 1998) (citing *Engle v. Isaac*, 456 U.S. 107, 134 n. 43, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982)).

Additionally, Salas-Macias neither claims nor demonstrates miscarriage of justice through actual

innocence.  "Without any new evidence of innocence, even the existence of a concededly meritorious

constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow

a habeas court to reach the merits of a barred claim."  *Schlup v. Delo*, 513 U.S. 298, 316, 115 S.Ct.

851, 130 L.Ed.2d 808 (1995).

Salas-Macias has failed to demonstrate "cause and prejudice" or a "miscarriage of justice"

to overcome the procedural default of the Guidelines claim he now asserts, and his § 2255 motion

should be dismissed with prejudice.

### C.  Salas-Macias' Guidelines Claim is Not Cognizable Under § 2255

Salas-Macias incorrectly alleges that Amendment 794 to U.S.S.G. § 3B1.2 was not available

to him at the time of his sentencing.  It was.  He suggests that the record is unclear whether the Court

considered all of the factors listed in Amendment 794, and that he is entitled to have his sentence

vacated and be re-sentenced in accordance with Amendment 794.  (Doc. 52)  His argument fails.

First, any belief by Salas-Macias that Amendment 794 was not available at the time of his

sentencing is misplaced.  Amendment 794 became effective on November 1, 2015, many months

prior to the preparation of his PSR on March 31, 2016 and prior to his sentencing on June 23, 2016.

Thus, Salas-Macias had the benefit of Amendment 794 at the time of his sentencing; however, as

more fully discussed below, rather than being entitled to a mitigating role reduction under § 3B1.2,

the facts instead supported a two-level enhancement under § 3B1.1 for Salas-Macias' aggravating

role in the offense as an organizer, leader, manager, or supervisor in the criminal activity.  Under

such circumstances, any alleged failure to consider all of the factors listed in Amendment 794 cannot be said to be fundamentally unfair or constitute a miscarriage of justice sufficient to form the basis for collateral relief under § 2255.

Second, the United States Supreme Court has held, albeit in a decision under the former United States Parole Commission system, that even post-sentencing changes in sentencing policy do not support a collateral attack on the original sentence under § 2255. *See United States v. Addonizio*, 442 U.S. 178, 186-87, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979) (actions taken by Parole Commission subsequent to sentencing do not retroactively affect the validity of the final judgment itself, nor do they provide a basis for collaterally attacking the sentence). *See also Burke v. United States*, 152 F.3d 1329, 1332 (11th Cir. 1998) (claim that the sentence imposed is contrary to a post-sentencing clarifying amendment is a non-constitutional issue that does not provide a basis for collateral relief in the absence of a complete miscarriage of justice); and, *United States v. Boman*, 25 Fed.Appx. 761, 762 (10th Cir. Dec. 5, 2001) ("It is doubtful that a post-sentencing clarifying amendment is a ground for collateral relief under § 2255.") *United States v. Quintero-Leyva*, 823 F.3d 519, 523 (9th Cir. 2016), cited by Salas-Macias, confirmed that Amendment 794 was intended to be a clarifying amendment and applies retroactively only to cases on direct appeal.

Here, of course, we are not faced with a *post*-sentencing amendment to the Guidelines, as Amendment 794 was obviously in effect at the time of Salas-Macias' sentencing. Salas-Macias' claim based on Amendment 794 as a clarifying amendment is simply not cognizable under § 2255.

### D.  Amendment 794 and Mitigating Role in the Offense

Salas-Macias recites the five factors set forth in Amendment 794 to U.S.S.G. § 3B1.2 and argues, in conclusory fashion, that "he meets all five (5) criteria, because [he] was only a 'runner'

-9-

or 'mule' and was only being paid/compensated for his services in the offense consistent with Amendment 794 and § 3B1.2." (Doc. 48, p. 16)  If Salas-Macias overcame the procedural bars to enable the Court to consider the merits of his Guidelines claim, the record amply demonstrates that Salas-Macias was not entitled to a mitigating role adjustment at sentencing, and that the two-level aggravating role enhancement for being an organizer, leader, manager, or supervisor of the criminal activity was properly applied.

Defense counsel objected to the two-level enhancement for Salas-Macias' aggravating role in the offense of conviction, arguing that while Salas-Macias agreed with the facts set forth in paragraphs 20, 21, and 22 of the PSR, "the factual basis does not tell the whole story[,]" and that "it would seem more appropriate that [co-defendant] Armando Picazo receive an aggravating role in the offense." (Doc. 34, pp. 1-2)  Defense counsel further argued that Salas-Macias "was a lower level dealer that dealt in ounce quantities that he obtained from Picazo." (Doc. 34, p. 2)  Stating that "[w]hile it is a close call," defense counsel suggested that the two-level enhancement was inappropriate under the circumstances in this case. (*Id.*)  Notably, no argument was even made that Salas-Macias was entitled to a mitigating role reduction pursuant to U.S.S.G. § 3B1.2.

The facts set forth in the PSR tell the following story.

Around the first of September, 2015, state and local law enforcement agencies learned that Armando Picazo and another individual known as "Primo" and "Chon" received a large shipment of methamphetamine from unknown suppliers within California. (Doc. 38, ¶ 11)  Agents later identified the other individual as Salas-Macias, and that upon arrival of the shipment Picazo and Salas-Macias coordinated the distribution of methamphetamine in the Fort Smith, Arkansas area. Law enforcement investigators gathered evidence of this from the following sources: intercepted

wire communications (phone calls and text messages), confidential sources (CS), undercover operations, and audio/visual surveillance on target locations and subjects.  (Doc. 38, ¶ 12)  Salas-Macias sold four ounces of methamphetamine to a CS in May or June, 2015.  (Doc. 38, ¶ 14)  On September 7, 2015, Salas-Macias contacted the CS and asked the CS if he/she could go to Mexico to pick up a shipment of methamphetamine. (Doc. 38, ¶ 15) On September 15, 2015, Salas-Macias and Picazo engaged in a series of conversations regarding the procurement of a large supply of methamphetamine.  Salas-Macias advised Picazo that the CS would transport the methamphetamine once it arrived in the United States.  They also discussed Picazo contacting his source of supply (SOS) and setting up a drug transaction.  (Doc. 38, ¶ 16)  On September 16, 2015, the CS advised agents that a deal could take place on September 17, 2015, and that the CS would get paid $600 per pound that he/she transported from California to Arkansas.  (Doc. 38, ¶ 17)

Picazo traveled to Las Vegas, Nevada the next day and met with his source of supply (SOS) to set up the forthcoming drug transaction.  Picazo remained in contact with Salas-Macias during this trip.  (Doc. 38, ¶ 18)  Upon Picazo's return to Arkansas on September 19, 2015, Salas-Macias and Picazo discussed the time when the CS could travel to Las Vegas to pick up the methamphetamine, as well as the CS's travel expenses.  (Doc. 38, ¶ 19)  On September 21, 2015, the CS along with an undercover officer (UC) met with Salas-Macias at Salas-Macias' residence.  Salas-Macias provided the CS with travel expenses in the amount of $1,000.00, and Salas-Macias explained to the CS that once the CS got closer to Las Vegas, Salas-Macias would provide the CS with the SOS's contact number.  The CS and UC left Salas-Macias' house and began their trip to Las Vegas, Nevada.  (Doc. 38, ¶ 20)

On September 22, 2015, Picazo contacted Salas-Macias to inquire whether the CS had

-11-

arrived in Las Vegas.  Salas-Macias replied that the CS was almost there.  Picazo then provided Salas-Macias with the SOS's contact number.  Salas-Macias then sent via text message the SOS's contact number to the CS.  (Doc. 38, ¶ 21)  The CS then placed a recorded call to the SOS, and the SOS then sent the CS a text advising of the location of the upcoming drug transaction.  (Doc. 38, ¶ 22)  After meeting with agents in Las Vegas, the CS and UC traveled to the location and, upon arrival, the CS met with the SOS who provided the CS with a red and white cooler containing six packages wrapped in plastic and carbon paper containing suspected methamphetamine.  (Doc. 38, ¶ 24)  The six packages later field tested positive for the presence of methamphetamine, and they weighed a total of 2,724 grams, which equates to approximately six pounds.  (Doc. 38, ¶ 26)  One of the packages containing methamphetamine was sent to the Las Vegas Metropolitan Police Department Forensic Laboratory for analysis and the results indicated the substance was 438.13 grams of a mixture of methamphetamine at 100% pure, or 438.13 grams of actual methamphetamine. The remaining 2,285.87 grams was not tested for purity.  (Doc. 38, ¶ 27)  After the drug transaction, the CS reported back to Salas-Macias.  (Doc. 38, ¶ 28)

Salas-Macias did not object to the above-stated facts in the PSR.  "A fact in a PSR to which the defendant has not specifically objected is a fact admitted by the defendant."  *See United States v. Abrica-Sanchez*, 808 F.3d 330, 334 (8th Cir. 2015) (quoting *United States v. White*, 447 F.3d 1029, 1032 (8th Cir. 2006)).

This series of drug trafficking activities is similarly set forth in the factual basis section of the Plea Agreement that Salas-Macias entered into.  (Doc. 25, ¶¶ 2(a)-(g))

Significant to the analysis of the present issue, Salas-Macias and Picazo received a large shipment of methamphetamine from unknown suppliers in California, and they coordinated the

distribution of that methamphetamine in the Fort Smith, Arkansas area.  On one occasion in May or June, 2015, Salas-Macia sold four ounces of methamphetamine to a CS.  Salas-Macias and Picazo jointly planned a trip to Las Vegas, Nevada to obtain a large quantity of methamphetamine and to import it to Arkansas.  Salas-Macias recruited the CS who drove out to Las Vegas to pick up the methamphetamine.  Salas-Macias provided the CS with money for travel expenses.  Salas-Macias remained in contact with the CS during the trip and directed the CS's actions.  Salas-Macias provided the SOS's contact number to the CS.  After the drug transaction was completed, the CS reported back to Salas-Macias that it was done.

Amendment 794 provided clarification of the factors a court is to consider in determining whether a defendant should receive a reduction under U.S.S.G. § 3B1.2 for being a minimal or minor participant in an offense.  Over five months after the effective date of Amendment 794, Salas-Macias submitted his objections to the PSR.  Although Salas-Macias objected to the two-level aggravating role enhancement reported in the PSR, he did not object to the PSR for failing to give him a mitigating role reduction.

In response to Salas-Macias' objection to the two-level enhancement for being an organizer, leader, manager, or supervisor of the criminal activity involved in this case, the U. S. Probation Office reported that "[t]he uncontested facts indicate that both Picazo and the defendant played an essential role in the procurement of the methamphetamine[,]" and that "according to *Application Note 4* of § 3B1.1, more than one person can qualify as a leader or organizer of criminal activity or conspiracy."  (Doc. 38-1, p. 2)  The facts of record clearly support that conclusion.

*Application Note 2* to U.S.S.G. § 3B1.1 states that "[t]o qualify for an adjustment under this section, the defendant must have been the organizer, leader, manager, or supervisor of one or more

-13-

other participants."  Here, that is unquestionably true, as Salas-Macias recruited the CS and directed his/her activities in connection with the criminal activity.

*Application Note 4* to § 3B1.1 sets forth various factors a court should consider in determining whether to impose an enhancement for a defendant's aggravating role in an offense, and among those factors are: the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.  The uncontested facts set out in Salas-Macias' Plea Agreement and in the PSR establish the presence of many of these factors, including Salas-Macias' involvement in large scale drug trafficking activities in Arkansas, his recruitment of the CS to transport a large shipment of methamphetamine into Arkansas, his involvement with Picazo in the planning and organization of the drug trafficking activities, and his degree of control and authority over at least one other individual (the CS) in the offense conduct.

Based on the record, the Court's finding that Salas-Macias was subject to a two-level enhancement under U.S.S.G. § 3B1.1 as an organizer, leader, manager, or supervisor of the criminal activity was supported by substantial evidence.  *See, e.g., United States v. Robertson*, 519 F.3d 452 (8th Cir. 2009) (leadership role affirmed where defendant exercised decision-making authority over both broad outline and specific details of scheme to transport more than 100 kilograms of marijuana from Arizona to Minnesota); *United States v. Rutter*, 897 F.2d 1558 (10th Cir. 1990) (evidence that defendant had recruited person to be "mule" to supply additional cocaine supported enhancement for aggravating role); *United States v. Bonilla-Filomeno*, 579 F.3d 582 (8th Cir. 2009) (two-level enhancement upheld where defendant recruited two co-conspirators to assist in picking up vehicle,

coordinated the pick up, offered one co-conspirator $300 to sign for the vehicle, and cocaine was hidden in the vehicle); *United States v. Maejia*, 928 F.2d 810 (8th Cir. 1991) (enhancement as organizer affirmed where defendant hired one individual to drive truck containing cocaine, controlled movements of truck, paid truck driver $2,000 for two days of service, and defendant had been under investigation for extensive high-volume cocaine trafficking); and, *United States v. Cole*, 657 F.3d 685 (8th Cir. 2011) (three-level enhancement affirmed where defendant directed and controlled one other individual as part of the conspiracy, defendant handled large quantities of drugs and money, and defendant transported and/or directed the transportation of drugs).

Accordingly, even if the Court were to address the merits of Salas-Macias' argument that he should have received a mitigating role reduction pursuant to Amendment 794 of U.S.S.G. § 3B1.2, the argument lacks support in the record and must be rejected.

### E.  No Entitlement to Relief Under 18 U.S.C. § 3582

Even if the Court were to liberally construe Salas-Macias's § 2255 motion as a motion for sentence reduction under 18 U.S.C. § 3582, Salas-Macias is not entitled to relief.

A district court is authorized to modify a Defendant's sentence only in specified instances where Congress has expressly granted the court jurisdiction to do so. *See United States v. Blackwell*, 81 F.3d 945, 947 (10th Cir. 1996), citing *United States v. Caterino*, 29 F.3d 1390, 1394 (9th Cir. 1994) (authority to change a sentence must derive from some federal statutory authority). 18 U.S.C. § 3582(c) provides that a court may not modify a term of imprisonment once it has been imposed, with three exceptions.  A court may modify a sentence: (1) in certain circumstances "upon motion of the Director of the Bureau of Prisons," *see* 18 U.S.C. § 3582(c)(1)(A); or, (2) "to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure,"

*see* 18 U.S.C. § 3582(c)(1)(B); or, (3) "upon motion of the defendant or the Director of the Bureau of Prisons," or on a court's own motion, in cases where the applicable sentencing range "has subsequently been lowered by the Sentencing Commission," *see* 18 U.S.C. § 3582(c)(2). Salas-Macias neither claims nor establishes that any of these exceptions have application to his case.

Salas-Macias further contends that "this Court can construe his pleading also under a Rule 60(b) Motion, because no relief was available until the amendment took effect on November 1, 2015." (Doc. 52, p. 2) Fed. R. Civ. P. 60(b) has no application to this case.

### E. No Evidentiary Hearing Is Warranted

A movant is not entitled to an evidentiary hearing on a § 2255 motion if "the motion and the files and records of the case conclusively show that the [movant] is entitled to no relief." *Nguyen v. United States*, 114 F.3d 699, 703 (8th Cir. 1997), quoting from *Voytik v. United States*, 778 F.2d 1306, 1308 (8th Cir. 1985). Such are the circumstances in this case where Salas-Macias has alleged insufficient factual and legal support for his claim. Accordingly, the undersigned recommends the summary dismissal of Salas-Macias' § 2255 motion without an evidentiary hearing.

### III. Conclusion

For the reasons and upon the authorities discussed above, Salas-Macias' Guidelines claim has been procedurally defaulted and is otherwise wholly unsupported by the record in this case. I recommend that Salas-Macias' Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. 48) be **DISMISSED with PREJUDICE**.

**The parties have fourteen (14) days from receipt of this Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely written objections may result in waiver of the right to appeal questions of fact. The parties are**

reminded that objections must be both timely and specific to trigger de novo review by the district court.

DATED this 26th day of January, 2017.

/s/ Mark E. Ford
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE